# Richmond

## AL HELLER v. CITY OF VIRGINIA BEACH.

March 5, 1973.

Record No. 8067.

Present, All the Justices.

*Gerald Rubinger* (*Parker, Rubinger & Jacobson*, on brief), for plaintiff in error.

*Edward L. Oast, Jr.* (*James T. Martin; Williams, Worrell, Kelly & Worthington*, on brief), for defendant in error.

COCHRAN, J., delivered the opinion of the court.

The question for our determination is whether Al Heller gave the notice required by Code § 8-653[1] before instituting this law action against the City of Virginia Beach for injuries alleged to have been caused by the City's negligence in maintaining a street.

In his motion for judgment Heller alleged that on May 13, 1969, at or near the intersection of 17th Street and Atlantic Avenue he fell and sustained injuries as a result of the dangerous condition of the

---

[1] Code § 8-653 provides in pertinent part:

"No action shall be maintained against any city or town for injury to any person or property . . . unless a written statement by the claimant, his agent, attorney or representative of the nature of the claim and of the time and place at which the injury is alleged to have occurred or been received shall have been filed with the city attorney or town attorney, or with the mayor, or chief executive, within sixty days after such cause of action shall have accrued . . . ."

street. He further alleged that he had given due notice to the City of his fall.

The City filed a demurrer and grounds of defense denying liability and asserting that Heller had failed to give the statutory notice. After answers to interrogatories had been filed by both Heller and the City a hearing was held on the City's motion for summary judgment. Thereafter the trial court entered summary judgment for the City, ruling that Heller had failed to comply with the notice requirements of § 8-653. Heller was awarded a writ of error.

In his answer to interrogatories and in his testimony at the hearing on the motion for summary judgment Heller stated that on May 27, 1969, his wife drove him to the Second Precinct station of the City's Police Department to report his accident. As he was unable to walk because of his injuries, Heller's report was made to two police officers who came to his side of the car and wrote down the information that he furnished, including time and place of the accident, the alleged defective condition of the street, the name and address of an eyewitness, the nature of his injuries, the hospital where he received treatment and the name of his attending physician. Heller further stated that the officers assured him that the accident report would be filed with the proper person.

Heller also stated that about three weeks later a claim adjuster for Aetna Casualty and Insurance Company, the City's liability insurance carrier, came to his home and obtained from him similar information about his fall, promising that his claim would be forwarded for evaluation.

The City in its answer to interrogatories admitted that the City Attorney's office on June 3, 1969, received written notice of Heller's claim which was forwarded to Aetna for handling. A written report dated May 27, 1969, signed by a City police officer, later deceased, giving detailed information of Heller's accident and stating that he wished to receive compensation therefor, was filed as an exhibit. It showed receipt by the City's Law Department on June 3, 1969. The report was not signed by Heller, nor was he able to identify it as the same report filled out by the police officers when he gave them the details of the accident.

An Assistant City Attorney for the City testified that the report received by the Law Department on June 3, 1969, was forwarded to the insurance carrier on June 10, 1969. He also identified various pencil notations on the original report as having been made by the senior claims adjuster for Aetna.

It thus appears that the written report signed by the police officer, giving information required by § 8-653, was filed with the City Attorney within the required statutory period and that the claim was investigated. The purpose of the statute is to enable a city to make a prompt investigation of tort claims, to correct dangerous or defective conditions, and, where justified, to avoid the expense and delay of litigation by making voluntary settlements with claimants. *See O'Neil* v. *City of Richmond*, 141 Va. 168, 172-73, 126 S.E. 56, 57 (1925). The written report of Heller's accident fulfilled that purpose.

In *City of South Norfolk* v. *Dail*, 187 Va. 495, 503-04, 47 S.E.2d 405, 408-09 (1948), we modified earlier decisions and held that the giving of the required notice of claim, although mandatory, is not jurisdictional. Substantial compliance to accomplish the statutory purpose is all that is required. *City of Portsmouth* v. *Cilumbrello*, 204 Va. 11, 12-13, 129 S.E.2d 31, 32-33 (1963); *Bowles* v. *City of Richmond*, 147 Va. 720, 727, 129 S.E. 489, 490 (1925), *aff'd on rehearing*, 147 Va. 729, 133 S.E. 593 (1926).

The present case is distinguishable from *Daniel* v. *City of Richmond*, 199 Va. 490, 100 S.E.2d 763 (1959), relied upon by the City. There, the day after the accident the injured claimant's employer notified the Department of Public Works by telephone. We held that this oral report did not sufficiently comply with the notice requirement and that actual knowledge by the city of the details of the accident could not be substituted for the notice required by statute or charter. We found it unnecessary to determine whether a letter from the victim's agent delivered after the statutory period had expired would have been, if delivered on time, a sufficient compliance.

Here, a written statement was made. It was not prepared in writing by Heller but it was made in his presence with his approval as he furnished the necessary information to police officers. We know of no reason why a city employee may not act in a dual capacity to the extent of giving routine mechanical assistance to those desiring to file tort claims against the city. Heller stated that the police officers who wrote out his claim told him that they would file it with the proper person, as indeed they did within the 60-day period. It was entirely proper for them to act for Heller in this respect, just as it would have been proper for them to have informed Heller that he should write out and sign his own accident claim and file it with the City Attorney. Otherwise, any person injured even slightly might unknowingly forfeit his right to recover against a city on a meritorious

claim unless he promptly employed an attorney to advise him as to the technical requirements of the statute.

We hold that the police officer who wrote out, signed and arranged for delivery to the City Attorney of the statement of Heller's claim did so as his agent or represenative in substantial compliance with the provisions of § 8-653. The order of the trial court entering summary judgment for the City will be reversed and the case remanded for a trial on its merits.

*Reversed and remanded.*